AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

White Samsung Cellphone
Model: Unknown
FP &F: 2024255400010701 Item: 006

Case No. 24-mj-08273-LR

FILED
Mar 27 2024
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY  s/ carolinalopez  DEPUTY

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-5, incorporated herein by reference.

located in the  Southern  District of  California , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 USC 1324 | Transportation of Illegal Aliens |

The application is based on these facts:
See Attached Affidavit of Border Patrol Agent Fernando Quiroz incorporated herein by reference.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Border Patrol Agent Fernando Quiroz
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
  telephone  *(specify reliable electronic means)*.

Date: 03/27/2024

*Judge's signature*

City and state: El Centro, California        HON. LUPE RODRIGUEZ JR., U.S. MAGISTRATE JUDGE
*Printed name and title*

## ATTACHMENT A-5
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-5:**     White Samsung Cellphone
Model: Unknown
Seized as FP&F: 2024255400010701 Item: 006
Seized from Cecilia MORALES-Ferrer
**(Target Device #4)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-5 include the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of March 4, 2024, up to and including March 19, 2024, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Device;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.

# AFFIDAVIT

I, Fernando Quiroz, United States Border Patrol Agent, having been duly sworn, depose and state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for warrant(s) to search the following electronic device(s):

**A-1:**    Black Apple iPhone
Model: Unknown
Seized as: FP&F: 2024255400010701 Item: 002
Seized from Dhan Paolo MALABRIGO
**(Target Device #1)**

**A-2:**    Black Apple iPhone
Model: Unknown
Seized as: FP&F: 2024255400010701 Item: 003
Seized from Dhan Paolo MALABRIGO
**(Target Device #2)**

**A-3:**    Red Motorola Cellphone
Model: Unknown
Seized as: FP&F: 2024255400010701 Item: 004
Seized from Alexis Hernan SANCHEZ-Arango
**(Target Device #3)**

**A-4:**    Black Samsung Cellphone
Model: Unknown
Seized as: FP&F: 2024255400010701 Item: 005
Seized from Jose Angel VILLAFAN-Gonzalez
**(Target Device #4)**

**A-5:**    White Samsung Cellphone
Model: Unknown
Seized as: FP&F: 2024255400010701 Item: 006
Seized from Cecilia MORALES-Ferrer
**(Target Device #4) (Collectively "Target Devices")**

as further described in Attachments A-1 to A-5, and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2. The requested warrant relates to the investigation and prosecution of Dhan Paolo MALABRIGO (MALABRIGO) for transportation of illegal aliens Cecilia MORALES-Ferrer (MORALES), Alexis Hernan SANCHEZ-Arango (SANCHEZ), and Jose Angel VILLAFAN-Gonzalez (VILLAFAN) (collectively, the "Material Witnesses") in violation of Title 8 U.S.C. § 1324 within the Southern District of California. The Target Devices were seized from MALABRIGO and the Material Witness on or about March 18, 2024, incident to the arrest of MALABRIGO and the Material Witness. The Target Devices are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

3. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth every fact that I, or others, have learned during the course of this investigation. The information contained in this Affidavit is based upon my personal observations and knowledge, my review of various official reports, and upon conversations with other Border Patrol Agents. Dates and times are approximate.

**EXPERIENCE AND TRAINING**

4. I am a United States Border Patrol Agent with the Department of Homeland Security, Customs and Border Protection, United States Border Patrol ("USBP"). I have been employed as a full-time, sworn federal BPA with the USBP since June 4, 2007, and graduated from the USBP Basic Border Patrol Training Academy located in Artesia, New Mexico. The Border Patrol Academy curriculum covers specialized training in the Immigration and Naturalization Act (INA), training in Titles 8, 18, 19, 21 and 31 of the United States Code, criminal law, and statutory authority.

5. I am currently assigned to the El Centro Sector Prosecutions Unit. The El Centro Sector Prosecutions Unit is tasked with the responsibility of investigating and prosecuting alien smuggling organizations that utilize the Southern and Central Districts of California as an operational corridor. In the course of my duties as a Border Patrol Agent, I investigate and prepare cases for prosecution against persons involved in the inducement of the illegal entry of undocumented aliens into the United States; the smuggling of undocumented aliens into the United States; and the transportation and harboring of undocumented aliens within the United States.

6. Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with uncharged co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with uncharged co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

7. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators prior to and/or following the crossing of the illegal aliens at

3

the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with uncharged co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing.

8. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

9. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

    a.    tending to indicate efforts to smuggle aliens from Mexico into the United States;

    b.    tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

    c.    tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

4

d.     tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e.     tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

f.     tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

10. On March 18, 2024, the Calexico Station's Anti-Smuggling Unit (ASU) was conducting surveillance in the East Desert of the Calexico Border Patrol Station's Area of Responsibility. approximately 25 miles east of Calexico Port of Entry. At approximately 7:33 p.m., BPA O. Ismail, assigned to the ASU in the Remote Video Surveillance System (RVSS) room at the Calexico Border Patrol Station, observed three suspected illegal aliens swimming northbound through the All-American Canal (AAC). BPA Ismail observed that the suspected illegal aliens were approximately two and a half miles west of the Gordons Well Road overpass near the 212 Monument. Agents observed the three suspected illegal aliens exit the AAC and begin moving northbound towards Interstate-8. BPA Schwantner observed the suspected illegal aliens stop a few yards south of I-8 and conceal themselves in some brush. Agent Schwantner relayed this information to ASU Agents in the field.

11. BPAs J. Bourque and A. Pena, driving unmarked Service vehicles, were parked on I-8 near where the suspected illegal aliens were hiding. Supervisory BPA-I A. Mills was also positioned nearby and observed a vehicle, later identified as a 2013 BMW X1, driving eastbound on I-8. BPAs Bourque, Pena, Mills, and Schwantner observed the BMW pull over and stop a short distance west of where the suspected illegal aliens were hiding and turn on its hazard lights. BPA Schwantner observed the suspected illegal aliens run towards the BMW and enter the BMW. BPAs Bourque, Pena, and Mills began to follow the BMW as it traveled away eastbound on I-8. BPAs Bourque, Pena, and Mills

followed the BMW for approximately seven miles before SBPA-I Mills activated the emergency lights and siren on his Service vehicle at the Greys Wells Road exit on I-8. The BMW pulled to the shoulder and stopped on I-8 just east of the Greys Well Road overpass.

12. SBPA-I Mills and BPA Pena approached the BMW and identified themselves as U.S. BPAs to the occupants of the vehicle. SBPA-I Mills ordered the driver of the BMW, later identified as MALABRIGO, to exit the vehicle, which he did. SBPA-I Mills placed MALABRIGO under arrest. SBPA-I Mills conducted an immigration interview with MALABRIGO and was able to determine that MALABRIGO was a United States Citizen.

13. At the same time, BPA Pena identified himself as a United States Border Patrol Agent to the three suspected illegal aliens in the BMW. BPA Pena conducted immigration interviews with the suspected illegal aliens, later identified as Cecilia MORALES-Ferrer, Alexis Hernan SANCHEZ-Arango, and Jose Angel VILLAFAN-Gonzalez, and was able to determine that two were citizens of Mexico and one was a citizen of Colombia. BPA Pena determined that the individuals were illegally present in the United States. MALABRIGO, MORALES, SANCHEZ and VILLAFAN were placed under arrest and were transported to the Calexico Border Patrol Station for further processing.

14. Material Witness MORALES stated she is a citizen of Mexico. MORALES stated she does not possess any immigration documents that would allow her to work or reside in the United States legally. MORALES stated that her family made arrangements for her to be smuggled to the United States illegally for $180,000.00 pesos ($10,686.00). MORALES' destination was Fresno, California.  MORALES stated that she made an illegal entry by climbing over the border fence. MORALES stated she got into the front passenger seat of the vehicle and a short time later they were stopped and arrested by the Border Patrol.

15. Material Witness SANCHEZ stated he is a citizen of Colombia. SANCHEZ stated he does not possess any immigration documents that would allow him to work or reside in the United States legally. SANCHEZ stated that a friend made arrangements for him to be smuggled to the United States illegally for an unknown amount. SANCHEZ

stated that he paid $100.00 USD to cross illegally into the United States tonight. SANCHEZ's destination was New York. SANCHEZ stated he made the illegal entry by passing through a hole in the border fence. SANCHEZ stated that once on the northside, a dark vehicle arrived and picked him up. SANCHEZ stated that the driver gestured for him to lay down. SANCHEZ stated that a short time later they were stopped and arrested by the Border Patrol.

16. Material Witness VILLAFAN stated he is a citizen of Mexico. VILLAFAN stated he does not possess any immigration documents that would allow him to work or reside in the United States legally. VILLAFAN stated he currently lives in Mexicali, Mexico. VILLAFAN stated he made arrangements to be smuggled to the United States illegally for $8,000.00. VILLAFAN's destination was California. VILLAFAN stated that he made the illegal entry by passing through a hole in the border fence. VILLAFAN stated that once on the northside, the vehicle arrived, and he got into the back seat. VILLAFAN stated that a short time later they were stopped and arrested by the Border Patrol.

17. During a search incident to arrest of MALABRIGO and the Material Witnesses; Agents located five cellphones. BPA Mills observed a black Apple iPhone (Target Device #1) in MALABRIGO's hand and BPA Justin Bourque found a black Apple iPhone (Target Device #2) in the center console of the BMW. MALABRIGO claimed ownership of Target Device #1 and Target Device #2. During the search of the Material Witnesses, BPA D. Davalos located a cellphone in each of their pockets: a red Motorola Cellphone (Target Device #3) was found in SANCHEZ's pants pocket; a black Samsung Cellphone (Target Device #4) was found in VILLAFAN's pants pocket; and a white Samsung Cellphone (Target Device #5) was found in MORALES' pants pocket. SANCHEZ, VILLAFAN, and MORALES all claimed ownership of their respective cellphones. All cellphones were seized as: FP&F: 2024255400010701.

18. I am aware that smuggling conspiracies require planning to successfully evade detection by law enforcement. In my professional training and experience, this may require planning and coordination in the days and weeks prior to the event. Additionally,

7

co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine their whereabouts. Given this, I respectfully request permission to search the Target Devices for data beginning on March 4, 2024, up to and including March 19, 2024, the day after the arrest of MALABRIGO and the Material Witnesses.

## METHODOLOGY

19. It is not possible to determine merely by knowing the cellular telephone's make, model and serial number, the nature, and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants, and have functions such as calendars and full address books, and can be minicomputers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and, instead, store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

20. Following the issuance of this warrant, a case agent familiar with the investigation will collect the Target Devices and subject them to analysis. All forensic

analysis of the data contained within the telephones, and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

21. Based on the foregoing, identifying, and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this Court.

## CONCLUSION

22. Based on all the facts and circumstances described above, I believe that probable cause exists to conclude that MALABRIGO and the Material Witnesses used the Target Devices to facilitate the offense of alien smuggling. The Target Devices likely were used to facilitate the offense by transmitting and storing data, specifically that described in Attachment B, which constitutes evidence of violations of Title 8, United States Code, Section 1324. I also believe that probable cause exists to believe that evidence of illegal activity committed by MALABRIGO, the Material Witnesses, and others continues to exist on the Target Devices. Therefore, I respectfully request that the Court issue this warrant.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Fernando Quiroz Border Patrol Agent
United States Border Patrol

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 27th day of March, 2024.

_____  12:52 p.m.
HON. LUPE RODRIGUEZ, JR.
UNITED STATES MAGISTRATE JUDGE

9

## ATTACHMENT A-1
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-1:**          Black Apple iPhone
Model: Unknown
Seized as FP&F: 2024255400010701 Item: 002
Seized from Dhan Paolo MALABRIGO
**(Target Device #1)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-2
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-2:**        Black Apple iPhone
                Model: Unknown
                Seized as FP&F: 2024255400010701 Item: 003
                Seized from Dhan Paolo MALABRIGO
                **(Target Device #2)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

# ATTACHMENT A-3
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-3:**	Red Motorola Cellphone
Model: Unknown
Seized as FP&F: 2024255400010701 Item: 004
Seized from Alexis Hernan SANCHEZ-Arango
**(Target Device #3)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-4
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-4:**       Black Samsung Cellphone
Model: Unknown
Seized as FP&F: 2024255400010701 Item: 005
Seized from Jose Angel VILLAFAN-Gonzalez
**(Target Device #4)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-5
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-5:**         White Samsung Cellphone
            Model: Unknown
            Seized as FP&F: 2024255400010701 Item: 006
            Seized from Cecilia MORALES-Ferrer
            **(Target Device #4)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

# ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-5 include the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of March 4, 2024, up to and including March 19, 2024, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Device;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.